IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

WOODSON T. DRUMHELLER,
    *Pro se* Plaintiff,

    v.                                  Civil No. 3:21cv565 (DJN)

KILOLO KIJAKAZI, *Acting Commissioner*
*of the Social Security Administration,*
    Defendant.

## MEMORANDUM OPINION

Plaintiff Woodson T. Drumheller ("Plaintiff"), proceeding *pro se*, filed the instant lawsuit

challenging the decision of Defendant Social Security Agency ("SSA" or "Defendant") to

disqualify him from representing disability claimants before SSA. This matter now comes

before the Court on the parties' cross-motions for summary judgment. For the reasons stated

herein, the Court will GRANT Defendant's Motion for Summary Judgment (ECF No. 18) and

DENY Plaintiff's Motion for Summary Judgment (ECF No. 23).

## I.    BACKGROUND

### A.    Factual Background

The Court will start by listing the undisputed material facts. Pursuant to Local Rule

56(B), Defendant included a section listing all undisputed material facts. (Def.'s Br. in Supp. of

Mot. for Summ. J. ("Def.'s Mem.") (ECF No. 19) at 6-10.) Defendant cited to the portions of

the record supporting its contentions. Local Rule 56(B) also requires that the party opposing

summary judgment list all material facts "as to which it is contended that there exists a genuine

issue necessary to be litigated and citing the parts of the record relied on to support the facts

alleged to be in dispute." Likewise, Federal Rule of Civil Procedure 56 requires that a party cite

to particular parts of the record when asserting that a fact is genuinely disputed.

Plaintiff also included a list of undisputed facts in his cross-motion for summary

judgment. (Pl.'s Cross-Mot for Summ. J. ("Pl.'s Mot.") (ECF No. 23) at 2-3.) Plaintiff then

incorporated these facts into his opposition to Defendant's Motion for Summary Judgment.

(Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. ("Pl.'s Opp.") (ECF No. 25) at 1.) However,

Plaintiff rarely cites to particular parts of the record in attempting to create disputes of fact.

Instead, Plaintiff includes an affidavit that simply attests to the accuracy of the facts contained in

the counterstatement. (Decl. of Woodson Drumheller (ECF No. 24-1).) However, "[t]he law is

well established that uncorroborated, self-serving testimony of a plaintiff is not sufficient to

create a material dispute of fact sufficient to defeat summary judgment." *DiQuollo v. Prosperity*

*Mortg. Corp.*, 984 F. Supp. 2d 563, 570 (E.D. Va. 2013). If a plaintiff opposes summary

judgment with an affidavit, "that affidavit must present evidence in substantially the same form

as if the affiant were testifying in court. A memorandum of law or brief will not suffice." *Blair*

*v. Colonnas Shipyard Inc.*, 52 F. Supp. 2d 687, 692 (E.D. Va. 1999) (quoting *Evans v. Techs.*

*Applications Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996)). Accordingly, Plaintiff's

counterstatement, where not supported by citations to the record, will not suffice to dispute the

well-supported facts that Defendant lists.

When ruling on a motion for summary judgment, "the Court may assume that facts

identified by the moving party in its listing of material facts are admitted, unless such a fact is

controverted in the statement of genuine issues filed in opposition to the motion." E.D. Va. Loc.

R. 56(B). Because Plaintiff did not properly dispute most of the facts with citations to the

record, the Court will assume that Plaintiff admits the facts that Defendant cites, unless Plaintiff

controverted such facts with support from the record. In any event, this case ultimately boils down to whether SSA properly disqualified Plaintiff. Although the parties may characterize them differently, the undisputed documents show the process that SSA employed in disqualifying Plaintiff from representing disability applicants before SSA. Accordingly, the Court will resolve the Motions based on the following facts.

Plaintiff previously held a license to practice law in both Virginia and Georgia. (Compl. (ECF No. 6) at 2.) On March 27, 2000, the Virginia State Bar Disciplinary Board ("VSB Board") issued an order suspending Plaintiff's license to practice law for two years after finding that Plaintiff violated its rules of conduct in representing a client in a personal injury matter. (Mar. 27, 2000 Order of Virginia State Bar Disciplinary Board ("VSB Disciplinary Order") (ECF No. 19-1) at 2-7.) The Board found that Plaintiff had not developed the evidence in the client's case nor properly communicated with the client for nearly ten years. (*Id.*) The Board concluded that the "Nature of Misconduct" included several violations of the Virginia Code of Professional Responsibility, including rules related to competence, promptness and zealous representation. (*Id.* at 6.)

In December 2000, during his suspension, Plaintiff petitioned the Board to surrender his license and, as a result, the Board revoked his license. (Dec. 15, 2000 Order of Virginia State Bar Disciplinary Board (ECF No. 19-2).) Upon learning of Plaintiff's suspension in Virginia, the State Bar of Georgia initiated its own investigation. (Mar. 27, 2003 Supreme Court of Georgia Order (ECF No. 19-3).) Plaintiff failed to respond to the investigation, and the Supreme Court of Georgia disbarred Plaintiff. (*Id.*)

Following the revocation of his law license, Plaintiff began representing disability claimants before SSA. (Compl. ¶ 6.) When SSA learned of Plaintiff's disbarments, it initiated

3

disqualification proceedings, serving him with a Notice of Intent to Disqualify on June 16, 2016. ("Notice" (ECF No. 19-4).) In the Notice, SSA stated that it sought to disqualify Plaintiff, because (1) the "Virginia State Bar Disciplinary Board suspended Respondent from practice of law for misconduct and his license to practice law was subsequently revoked," and (2) the "Supreme Court of Georgia disbarred Respondent for misconduct." (*Id.* at 3, 5.) Plaintiff filed an Answer to the Notice of Intent to Disqualify. (ECF No. 19-5.)

SSA sought a decision based on the record, to which Plaintiff objected. (Decision of the Appeals Council ("AC Remand") (ECF No. 19-6).) On February 9, 2017, the Administrative Law Judge Robert Droker ("ALJ Droker") issued a decision based on the record, finding that disqualification constituted the sole sanction available and disqualified Plaintiff from representing parties in dealings with SSA. (*Id.* at 3-4.) Plaintiff appealed and, on January 31, 2018, the Appeals Council remanded the case, finding that ALJ Droker had erred in issuing a decision without holding a hearing. (*Id.* at 6-7.) It did not reach the merits of ALJ Droker's decision. (*Id.* at 6.)

On remand, Plaintiff moved for ALJ Droker to recuse himself, arguing that "the outcome of this matter is foregone," because ALJ Droker had ruled against him previously without a hearing. (ECF No. 19-7 at 3.) ALJ Droker denied the motion for recusal. (*Id.* at 4.)

On April 24, 2018, following the submission of briefs, ALJ Droker presided over a hearing. (May 16, 2018 ALJ Decision (EF No. 19-8).) During the hearing, Plaintiff elicited testimony from three witnesses. (*Id.* at 7-9.) This included a former client that Plaintiff had represented before SSA and two character witnesses. (*Id.*) Plaintiff himself also testified. (*Id.* at 9.) He conceded that Virginia suspended his law license for violations of three provisions of the disciplinary rules. (*Id.*)

4

In his decision, ALJ Droker rejected Plaintiff's argument that he had not been disbarred due to "misconduct." (*Id.* at 10-11.) He based this on the evidence demonstrating that Plaintiff "was found to have engaged in acts of client neglect, failure to communicate, and failure to respond to the Georgia state Bar's investigation of his conduct." (*Id.* at 12.) ALJ Droker also rejected Plaintiff's argument that he had the discretion whether or not to disqualify him. (*Id.* at 13.) Therefore, ALJ Droker disqualified Plaintiff "from representing parties in dealings with SSA until he otherwise meets the criteria for reinstatement under SSA's regulations." (*Id.* at 14.)

Plaintiff appealed ALJ Droker's decision to the Appeals Council. (May 28, 2021 AC Panel Decision (ECF No. 19-9) at 5.) The parties both submitted briefs and appeared before the Appeals Council for oral argument on December 7, 2018. (*Id.* at 5-6.) The Appeals Council found "that the suspension in Virginia and disbarment in Georgia were based on misconduct." (*Id.* at 7.) The Appeals Council further agreed that disqualification constituted the sole remedy based on SSA regulations. (*Id.* at 7-8.) Accordingly, on May 18, 2021, the Appeals Council affirmed ALJ Droker's decision. (*Id.* at 11.)

## B.    Procedural Background

On September 27, 2021, Plaintiff filed his Complaint (ECF No. 6) in this Court. Plaintiff brings five counts based on his disqualification by SSA. In Counts I and II, Plaintiff alleges that SSA violated his Fifth Amendment right to due process of law by holding a hearing before a biased hearing officer. (Compl. ¶¶ 21, 23.) In Count III, Plaintiff alleges a violation of the Equal Protection Clause of the Fourteenth Amendment, because SSA treated him differently as a disbarred attorney than it does other representatives, namely, non-attorneys. (Compl. ¶¶ 24-25.) In Count IV, Plaintiff alleges that SSA violated Plaintiff's Fifth Amendment right to due process of law by making a finding beyond the issue charged in its Notice of Intent to Disqualify.

(Compl. ¶ 28.) Plaintiff also claims that these actions violated 5 U.S.C. § 706 of the Administrative Procedures Act ("APA"), because SSA issued an arbitrary and capricious decision. (Compl. ¶¶ 21, 23, 25, 28.) In Count V, Plaintiff asks the Court to declare that "disbarment of an attorney is not mandatory as the SSA has contended." (Compl. ¶ 30.) For relief, Plaintiff requests that the Court declare that SSA violated his constitutional rights, vacate the Appeals Council's decision of disqualification, permanently enjoin SSA from further barring him from representing clients before SSA, and to award him monetary relief. (Compl. at 10.) Alternatively, Plaintiff asks the Court to order a new administrative hearing conducted on Plaintiff's character and ability to provide valuable assistance to claimants. (*Id.*)

On November 19, 2022, Plaintiff filed a Motion for Stay of Enforcement and Brief in Support Thereof (ECF No. 11), asking the Court to stay SSA's disqualification order pending the resolution of this lawsuit. Defendant opposed (ECF No. 14) and, on December 21, 2021, the Court denied Plaintiff's motion on the grounds that Plaintiff had not demonstrated a likelihood of success on the merits or that he would suffer irreparable harm absent an injunction. (ECF No. 15.) On February 10, 2022, Defendant filed its Motion for Summary Judgment (ECF No. 18) and, on March 15, 2022, Plaintiff filed his Motion for Summary Judgment. (ECF No. 23.) That day, Plaintiff also filed his Brief in Opposition to Defendant's Motion for Summary Judgment (("Pl.'s Opp.") (ECF No. 25).) On April 5, 2022, Defendant filed its Opposition to Plaintiff's Cross-Motion for Summary Judgment and Reply in Support of Defendant's Motion for Summary Judgment (("Def.'s Opp.") (ECF No. 26).) On April 19, 2022, Plaintiff filed a Rebuttal Brief to

Defendant's Brief in Opposition to Plaintiff's Cross Motion for Summary Judgment ((("Pl.'s Reply") (ECF No. 28)), rendering this matter ripe for review.[1]

## II.   STANDARD OF REVIEW

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the movant properly supports the motion, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

The relevant inquiry in a summary judgment analysis focuses on "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *Id.* at 255. Moreover, the Court cannot weigh the evidence to enter a judgment, but simply must determine whether a genuine

---

[1]     The Court dispenses with oral argument, because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process.

issue for trial exists. *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 283 (4th Cir. 2013) (quoting *Anderson*, 477 U.S. at 249).

Once the moving party properly submits and supports a motion for summary judgment, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; instead, there must be no genuine issue of material fact. *Anderson*, 477 U.S. at 247-48. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

Indeed, the Court must grant summary judgment if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp*, 477 U.S. at 322. To defeat an otherwise properly supported motion for summary judgment, the non-moving party "must rely on more than conclusory allegations, 'mere speculation,' the 'building of one inference upon another,' the 'mere existence of a scintilla of evidence,' or the appearance of some 'metaphysical doubt' concerning a material fact." *Lewis v. City of Va. Beach Sheriff's Office*, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (citations omitted). A "genuine" issue concerning a "material" fact only arises when the evidence, viewed in the light most favorable to the non-moving party, allows a reasonable factfinder to return a verdict in that party's favor. *Anderson*, 477 U.S. at 248.

When ruling on cross motions for summary judgment, courts review "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Defs. of Wildlife v. N.C. Dep't of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014).

With respect to each motion, the Court must separately resolve any factual disputes and competing rational inferences in favor of the non-movant. *Id.* at 392. "[W]hen cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they may be probative of the non-existence of a factual dispute." *Cincinnati Ins. Co. v. Fish*, __ F. Supp. 3d __, 2022 WL 562644, at \*5 (D. Md. Feb. 24, 2022) (cleaned up).

Of course, the Court affords *pro se* complaints a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 (4th Cir. 2006). However, the Court need not attempt "to discern the unexpressed interest of the plaintiff." *Id.* Nor does the requirement of liberal construction excuse a clear failure in the pleading to allege a federally cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990) (affirming dismissal of certain claims brought by *pro se* plaintiff despite liberal construction). As explained by the Fourth Circuit, this liberal construction does not require district courts "to conjure up and decide issues never fairly presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985).

### III.   ANALYSIS

Resolution of these cross-motions boils down to answering three questions: (1) whether SSA violated the law in conducting a hearing in front of a biased ALJ; (2) whether SSA improperly went beyond the charges in its Notice of Intent to Disqualify; and, (3) whether SSA improperly determined that it had to disqualify Plaintiff when it sustained the charges against him based on his disbarment due to misconduct. Plaintiff alleges various constitutional violations based on these three allegations. Therefore, the Court will address each in turn before turning to how the resolution of each question affects the Counts brought by Plaintiff in the Complaint.

9

### A.   Plaintiff Has Not Shown That a Genuine Dispute of Material Fact Exists as to Whether SSA Conducted a Hearing Before a Biased ALJ.

Plaintiff claims that SSA denied him constitutional due process by refusing his request to have ALJ Droker recuse himself due to bias following remand from the Appeals Council.  (Pl.'s Mem. in Supp. of Cross-Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 24) at 3-5.)  In the context of judicial recusal[2], "what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994).  "[A] judge must possess neither actual nor apparent bias against a party." *United States v. Cherry*, 330 F.3d 658, 665 (4th Cir. 2003).  To disqualify a judge, the "bias or prejudice must, as a general matter, stem from 'a source outside the judicial proceeding at hand.'" *Belue v. Leventhal*, 640 F.3d 567, 572 (4th Cir. 2011) (quoting *Liteky*, 510 U.S. at 545).

Furthermore:

> '[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.' And, 'opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.'

*United States v. Lentz*, 524 F.3d 501, 530 (4th Cir. 2008) (quoting *Liteky*, 510 U.S. at 555).

Moreover, the Fourth Circuit has consistently emphasized the "high bar for recusal." *Belue*, 640 F.3d at 574.  Generally, "courts have only granted recusal motions in cases involving particularly egregious conduct." *Id.* at 573.  And importantly, "recusal decisions 'reflect not only

---

[2]      Plaintiff has not offered another standard that would apply to recusal decisions of an Administrative Law Judge other than the standard that applies to judicial recusals.  SSA's regulations require that "[n]o hearing officer shall hold a hearing in a case in which he or she is prejudiced or partial about any party, or has any interest in the matter." 20 C.F.R. § 404.1765. Given that the inquiry in judicial recusals focuses on the appearance of bias in addition to actual bias, the judicial recusal standard would afford Plaintiff with at least as much protection from a biased ALJ as the regulation's prohibition against actual bias.

the need to secure public confidence through proceedings that appear impartial, but also the need

to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially

manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking.'" *Id.*

at 574 (*quoting In re United States*, 441 F.3d 44, 67 (1st Cir. 2006)).

Plaintiff, however, fails to cite to any evidence in the record suggesting that ALJ Droker

harbored a bias against him. The lone fact that Plaintiff cites to support his allegation of bias

stems from the fact that ALJ Droker initially decided the charges against Plaintiff without

conducting a full hearing. But a previous adverse ruling against a party does not give rise to a

basis to recuse. *Liteky*, 510 U.S. at 555. Plaintiff does not point to any aspect of ALJ Droker's

initial decision that displays bias against Plaintiff, other than that ALJ Droker ruled against him.

Likewise, Plaintiff does not point to any comments made by ALJ Droker during the hearing or in

the subsequent decision that could display a "deep-seated favoritism or antagonism," such that he

could not render judgment fairly. Indeed, setting aside the initial determination, Plaintiff does

not point to any evidence that could arguably give rise to an inference of bias. Accordingly,

Plaintiff has not shown that a genuine dispute of material fact exists as to the impartiality of ALJ

Droker.

    **B.**    **Plaintiff Has Not Shown That a Genuine Dispute of Material Fact Exists as
to Whether SSA Went Beyond the Charges in the Notice of Intent to
Disqualify.**

Additionally, Plaintiff challenges the disqualification process by alleging that ALJ

Droker and the Appeals Council went beyond the single charge, implicating the notice

requirement of procedural due process. (Pl.'s Mem. at 6.) However, the undisputed facts of this

case belie Plaintiff's assertion.

In its Notice of Intent to Disqualify, SSA included two charges. (Notice at 3-5.) In the

first, SSA charged Plaintiff as follows: "[t]he Virginia State Bar Disciplinary Board suspended

11

Respondent from the practice of law for misconduct and his license to practice law was

subsequently revoked, so he must be disqualified from acting as a claimants representative

before SSA." (*Id.* at 3.) In the second, SSA charged Plaintiff as follows: "[t]he Supreme Court

of Georgia disbarred Respondent for misconduct, so SSA must disqualify him from acting as a

claimants representative." (*Id.* at 5.)

> In the Notice, SSA included the following as the "Nature of Proceedings":

> When SSA has evidence that a representative of claimants has been disbarred or
> suspended from any bar or court for misconduct, SSA may initiate
> disqualification proceedings. 20 C.F.R. §§ 404.1745(d), 416.1545(d). During
> those proceedings, SSA will consider only whether the representative was
> disbarred or suspended due to misconduct, and will not re-examine or revise the
> factual or legal conclusion that led to the disbarment or suspension. 20 C.F.R.
> §§ 404.1770(a)(2), 416.1570(a)(2). When SSA finds that a representative was
> disbarred or suspended from a court or bar based on misconduct, SSA will
> disqualify that representative. 20 C.F.R. §§ 404.1770(a)(3)(ii), 416.1570(a)(3)(ii).

(*Id.* at 3.) Thus, the Notice informed Plaintiff of two charges against him, both that he had been

disbarred for misconduct and that, if sustained, the charges would result in disqualification.

In his decision, ALJ Droker found that the "record conclusively demonstrates that the

Virginia State Bar Disciplinary Board suspended Respondent's license to practice law based on

misconduct in December 2000, and later revoked his license upon his own motion." (ALJ

Droker Dec. at 11.) ALJ Droker additionally found that the record showed that Georgia

disbarred Plaintiff in March 2003 after he failed to respond to its investigation of the misconduct

charges levied by the Virginia State Bar Disciplinary Board. (*Id.*) Further, ALJ Droker found

that "[t]here is no dispute that [Plaintiff's] suspension, and later disbarment, were based on

misconduct." (*Id.*) ALJ Droker then cited the VSB disciplinary decision for the specific rules

that it found that Plaintiff had violated. (*Id.* at 11-12.) Because Plaintiff had been disbarred for

misconduct, ALJ Droker sustained the charges and disqualified Plaintiff from representing

parties in dealings with SSA. (*Id.* at 14.)

As the record clearly demonstrates, SSA informed Plaintiff that it intended to disqualify

him due to his disbarments based on misconduct. Then, it found that he had been disbarred due

to misconduct and, therefore, disqualified him. Accordingly, no genuine dispute of material

facts exist that SSA disqualified Plaintiff for a reason that went beyond the charges in the Notice

of Intent to Disqualify.

### C.    Disqualification as the Only Sanction

Plaintiff also alleges that SSA improperly found that disqualification represented the only

sanction for a disbarred attorney. Plaintiff claims that this violated his rights to equal protection

in that it treats disbarred attorneys differently from non-attorney claimant representatives. (Pl.'s

Mem. at 5-6.) To reach this conclusion, Plaintiff argues that the word "may" in 42 U.S.C.

§ 406(a)(1) confers discretion on SSA to disqualify a person, rather than making disqualification

mandatory. (Pl.'s Reply at 2.) Indeed, this contention forms the crux of Plaintiff's Complaint.

In enacting the Social Security Act, Congress allowed for SSA to prescribe rules

governing the representation of claimants before SSA:

> The Commissioner of Social Security may prescribe rules and regulations
> governing the recognition of agents or other persons, other than attorneys as
> hereinafter provided, representing claimants before the Commissioner of Social
> Security, and may require of such agents or other persons, before being
> recognized as representatives of claimants that they shall show that they are of
> good character and in good repute, possessed of the necessary qualifications to
> enable them to render such claimants valuable service, and otherwise competent
> to advise and assist such claimants in the presentation of their cases. An attorney
> in good standing who is admitted to practice before the highest court of the State,
> Territory, District, or insular possession of his residence or before the Supreme
> Court of the United States or the inferior Federal courts, shall be entitled to
> represent claimants before the Commissioner of Social Security. Notwithstanding
> the preceding sentences, the Commissioner, after due notice and opportunity for
> hearing, (A) may refuse to recognize as a representative, and may disqualify a
> representative already recognized, any attorney who has been disbarred or
> suspended from any court or bar to which he or she was previously admitted to
> practice or who has been disqualified from participating in or appearing before
> any Federal program or agency, and (B) may refuse to recognize, and may

13

> disqualify, as a non-attorney representative any attorney who has been disbarred
> or suspended from any court or bar to which he or she was previously admitted to
> practice.

42 U.S.C. § 406(a)(1).

Pursuant to this authority, SSA promulgated rules governing claimant representatives, including the sanctions hearing and reinstatement process. 20 C.F.R. §§ 404.1740-1799. The rules provide that when SSA has evidence that a claimant's representative "[h]as been, by reason of misconduct, disbarred or suspended from any bar or court to which he or she was previously admitted to practice," SSA "may begin proceedings to suspend or disqualify that individual from acting in a representational capacity." 20 C.F.R. § 1745(d). SSA then issues a notice to the representative, who has an opportunity to file an answer, followed by the appointment of an ALJ to conduct a hearing and issue a decision. 20 C.F.R. §§ 404.1750-70.

If the ALJ sustains the charges, "[d]isqualification is the sole sanction available if the charges have been sustained because the representative has been disbarred or suspended from any court or bar to which the representative was previously admitted . . . ." 20 C.F.R. § 1770(a)(3)(ii). The regulation provides that the ALJ will consider the reason for the disbarment, suspension or disqualification action in determining whether the person has been disbarred or suspended by reason of misconduct. 20 C.F.R. § 404.1770(a)(2).

Importantly, the regulations distinguish between a disbarment based on misconduct and one based on lesser reasons. "If the action was taken solely for administrative reasons (e.g., failure to pay dues or to complete continuing legal education requirements), that will not disqualify the person from acting as a representative before us." 20 C.F.R. § 404.1770(a)(2). In considering whether the disbarment or suspension resulted from misconduct, the ALJ "will not

14

re-examine or revise the factual or legal conclusions that led to the disbarment, suspension, or disqualification." *Id.*

Plaintiff claims that Congress bestowed discretion on SSA to disqualify representatives who had been disbarred, but that SSA violated the statute by declaring disqualification as the sole sanction for disbarment. (Pl.'s Mem. at 7.)  Plaintiff focuses on the word "may" in the statute and cites to *Dalton v. United States*, 816 F.2d 971 (4th Cir. 1987) for support that this means SSA could not find disqualification mandatory. (Pl.'s Mem. at 7.)  In *Dalton*, the Fourth Circuit held that the Secretary of Agriculture erred in determining that it lacked discretion to substitute a civil monetary fine for disqualification as a sanction for violation of the Federal Food Stamp Program established by Congress.  816 F.3d at 972.  The Food Stamp Act provided that the Secretary of Agriculture could disqualify a store from participation in the Food Stamp Program if it violated the Act.  *Id.*  However, if the Secretary found that disqualification would "cause hardship to food stamp households," based on findings as specified in the regulations issued by the Secretary, then the Secretary could substitute a civil money penalty.  *Id.* Thereafter, the Department of Agriculture took the position in a policy memorandum that a "civil money penalty may not be imposed in a second sanction case if the new sanction is greater than a one-year disqualification."  *Id.* at 973.  A plaintiff store sought judicial review that its disqualification was mandated and that the Department lacked discretion to substitute a civil money penalty for a second violation.  *Id.*  The district court affirmed the administrative decision, and the plaintiff appealed.  *Id.*

The Fourth Circuit reversed, concluding that the statute "expressly conferred on the Department [of Agriculture] a discretion to substitute in this case a civil money penalty for a disqualification."  *Id.*  The court noted that the statute used the term "may," which "normally

15

confers a discretionary power, not a mandatory power." *Id.* In determining that it lacked

discretion to substitute a civil money penalty for a second violation, the Department essentially

acted to "delete and to repeal that section of the Act which gave the Department this

discretionary power in favor of a first or second violator of the Act." *Id.* at 974. The Department

lacked the authority to make such a deletion. *Id.* Because the Department's policy denied the

reviewing officer any right to exercise the discretionary power to substitute a civil money penalty

in lieu of disqualification for a second sanction, it constituted an invalid and ineffective policy.

*Id.* Accordingly, the Fourth Circuit remanded the case to the Department to exercise its

discretion. *Id.*

      The Court finds Plaintiff's reliance on *Dalton* unpersuasive. *Dalton* concerned a statute

that gave the administrative agency the discretion to choose between two distinct options. Yet,

the agency essentially read out of the statute one of the options and, therefore, its discretion to

consider between the options. Here, the statute gives discretion to SSA to disqualify

representatives who have been disbarred (regardless of the reason for disbarment). SSA

exercises that discretion in two ways. First, SSA regulations provide that it "*may* file charges"

seeking sanctions when it has evidence that a representative fails to meet its qualifications or has

violated its rules, such as having previously been disbarred. 20 C.F.R. § 404.1745. Thus, SSA

has discretion whether or not to bring charges at all, consistent with Congress' grant of discretion

that it "may disqualify a representative already recognized, any attorney who has been

disbarred." 42 U.S.C. § 406(a)(1). Second, SSA has exercised its discretion to distinguish

between representatives who have been disbarred for misconduct as opposed to those who have

been disbarred for administrative reasons. The statute does not distinguish between the two.

Yet, SSA has exercised its discretion to distinguish between the two. If SSA sustains the

16

charges, it will disqualify representatives whose disbarments stem from misconduct, while it may

not necessarily disqualify representatives whose disbarments stem from administrative

violations.

SSA's comments to the regulations support that SSA exercised the discretion granted to it

by the statute.  In response to a public comment asking for an explanation as to why the rule

makes disqualification mandatory for a disbarment based on misconduct, when the statutory

language says that SSA "may" disqualify an individual in such instances, SSA explained:

> SSA has exercised discretion by narrowing, through these rules, the basis upon
> which charges of disbarment, suspension or disqualification may be sustained.
> Section 205 of the SSPA provides SSA with the discretion to disqualify
> representatives from practice before SSA if the representative has been suspended
> or disbarred by a court or bar . . . . SSA has in these rules elected to narrow the
> circumstances under which it will disqualify a representative to those
> disbarments, suspensions, or disqualifications that were based on misconduct.
> SSA will also exercise discretion under these rules in deciding when to bring
> charges.

SSR 0960-AG15, 71 Fed. Reg. 2871-01, 2874 (Jan. 18, 2006).  Accordingly, the Court

rejects Plaintiff's argument that SSA improperly made disqualification the sole remedy

when it sustains charges against an individual for disbarment based on misconduct.

Thus, the Court rejects Plaintiff's three overarching arguments:  (1) that SSA

conducted a hearing before a biased decisionmaker; (2) that SSA went beyond the single

charge in its Notice of Intent to Disqualify; and (3) that SSA illegally determined that it

lacked discretion whether to disqualify Plaintiff upon sustaining the charges against him.

Having dispatched these three issues, the Court will turn to each of Plaintiff's five counts.

### D.    Counts One and Two – Due Process Challenge Based on Bias

In Counts One and Two, Plaintiff alleges that SSA violated his Fifth Amendment

right to due process of law in disqualifying him from representing disability claimants

before SSA.  (Compl. ¶¶ 19-23.)  The Due Process Clause guarantees that "[n]o person

shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Edridge*, 424 U.S. 319, 333 (1976) (cleaned up). "To prevail on a procedural due process claim, a plaintiff must show (1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." *Accident, Injury & Rehab., PC v. Azar*, 943 F.3d 195, 203 (4th Cir. 2019) (cleaned up).

Plaintiff challenges the procedures employed, implicating the third prong. The "central meaning of procedural due process" comes in the form of the rule that "[p]arties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972); *see also D.B. v. Cardall*, 826 F.3d 721, 741-42 (4th Cir. 2016) ("And when the government deprives a person of a protected liberty or property interest, it is obliged to provide notice and opportunity for hearing appropriate to the nature of the case.").

Plaintiff has presented no evidence that he received inadequate process. SSA afforded Plaintiff a full hearing that allowed him to put on evidence and testimony. Then, the Appeals Council held a separate oral argument preceded by full briefing. Plaintiff's due process challenges to the procedures in Counts One and Two stem from his allegation of bias on the part of ALJ Droker. As discussed above, Plaintiff has not shown that a genuine dispute as to any material fact exists as to ALJ Droker's impartiality. Accordingly, the Court will grant summary judgment for Defendant on Counts One and Two.

### E.    Count Three – Equal Protection

In Count Three, Plaintiff alleges that SSA's disqualification violates his right to equal protection under the Fourteenth Amendment.[3]  Specifically, Plaintiff alleges that by disqualifying him for his disbarment, SSA treated him differently than "any other representative appearing before the SSA" in violation of the Fourteenth Amendment guarantee of equal protection of the law.  (Compl. ¶ 25.)  Plaintiff seems to argue that the regulation requiring disqualification of a disbarred attorney results in unequal treatment with respect to non-attorney representatives.  (Pl.'s Mem. at 5-6.)

To establish an equal protection violation, a plaintiff must show "that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Equity In Athletics, Inc. v. Dept. of Educ*. 639 F.3d 91, 108 (4th Cir. 2011).  Once the plaintiff makes this showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).  Here, Plaintiff cannot meet either prong of the first showing.

Plaintiff fails to establish his status as a similarly situated individual.  In the equal protection context, courts look at whether governmental decisionmakers treat persons differently "who are in all relevant respects alike." *Id.* at 654.  Plaintiff attempts to group himself with non-attorney representatives.  However, his status as a disbarred attorney renders him dissimilar from

---

[3]     Although Plaintiff brings this under the Fourteenth Amendment, the Fourteenth Amendment does not apply against the federal government. *United States v. Finnell*, 256 F. Supp. 2d 493, 498 (E.D. Va. 2003).  However, courts review equal protection actions against the federal government under the Fifth Amendment. *See Buckley v. Valeo*, 424 U.S. 1, 93 (1976) ("Equal protection analysis in the Fifth Amendment is the same as that under the Fourteenth Amendment.").

non-attorney representatives. The individuals to whom he compares himself have never had a state licensing board declare them unfit to practice law based on a finding of misconduct. Plaintiff has, which bears directly on his ability to represent claimants. As to other disbarred individuals, the similarly situated individuals, Plaintiff cannot claim unequal treatment. Thus, Plaintiff has not identified unequal treatment from those similarly situated to him.

Additionally, Plaintiff fails the second prong of the initial requirement for an equal protection challenge, because he has not identified any discriminatory animus on the part of SSA. Indeed, Plaintiff has made no effort to put forth any evidence of a discriminatory animus. Because Plaintiff fails to make this initial showing, the Court need not address whether SSA's actions meet the requisite level of scrutiny. *See id.* at 654 ("Once this [initial] showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny."). Moreover, to the extent that Plaintiff bases his equal protection challenge on his theory that SSA cannot automatically disqualify representatives upon sustaining charges against them based on a misconduct disbarment, the Court has already rejected that argument above.

Plaintiff has failed to identify a genuine dispute of any material fact with respect to his claim that SSA violated the Equal Protection Clause in disqualifying him. Accordingly, the Court will grant summary judgment to Defendant on Count Three.

### F.    Count Four – Due Process

In Count Four, Plaintiff alleges that Defendant violated his Fifth Amendment right to due process. Specifically, Plaintiff argues that Defendant went beyond the single charge in the Notice of the Intent to Sue and disqualified him for lack of good character.

20

As discussed above, the evidence in this case forecloses Plaintiff's argument. Defendant listed two charges in the Notice that it sent to Plaintiff — one for his disbarment in Virginia and one for his disbarment in Georgia. The Notice indicated that the disbarments resulted from misconduct. Further, SSA notified Plaintiff that if it found the disbarments stemmed from misconduct and sustained the charges, it would disqualify him. Then, in its decision, SSA indicated that it had disqualified Plaintiff, because he had been disbarred based on misconduct. Thus, the record indicates that SSA notified Plaintiff of the potential bases for his disqualification and then disqualified him on those bases. Accordingly, Plaintiff has failed to identify any genuine dispute of material fact as to whether SSA went beyond the charges in the Notice of Intent to Disqualify. Consequently, the Court will grant summary judgment to Defendant on Count Four.

### G.    Count Five – Declaration

In Count Five, Plaintiff asks the Court to "hold that disbarment of an attorney is not mandatory as the SSA has contended." (Compl. at 9.) However, the Court finds, for the reasons stated above, that Defendant has failed to show that SSA improperly determined that disbarment for misconduct requires disqualification of a representative. Accordingly, the Court will grant summary judgment for Defendant on Count Five.

### E.    Administrative Procedures Act

Finally, Plaintiff claims that the allegations that give rise to his constitutional claims also give rise to violations of the Administrative Procedures Act, 5 U.S.C. § 706 ("APA"). Specifically, Plaintiff claims that SSA committed an abuse of discretion in failing to remove ALJ Droker from the case, because of the claimed bias. Plaintiff also claims this failure constituted

an arbitrary and capricious decision. Plaintiff further claims that, in going beyond the charges in the Notice of Intent to Sue, SSA violated the APA.[4]

The APA provides that a reviewing Court shall "hold unlawful and set aside agency action, findings, and conclusions found to be —

A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

B) contrary to constitutional right, power, privilege, or immunity;

C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

D) without observance of procedure required by law;

E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court."

5 U.S.C. § 706(2)(A)-(F).

The Court has already rejected the factual contentions on which Plaintiff bases these claims. Thus, Defendant did not abuse its discretion or act in an arbitrary or capricious manner, and substantial evidence supports its decision. Similarly, Defendant did not act in excess of its statutory authority or contrary to any constitutional rights. Like his constitutional claims, Plaintiff has failed to present a genuine dispute of any material fact that would allow his APA claims to survive. Accordingly, the Court will grant Defendant summary judgment on Plaintiff's APA claims.

---

[4]     Defendant asserts that the APA does not confer a cause of action for Plaintiff to bring this action under the statute. Because Plaintiff's APA claims fail regardless of whether the APA grants him a cause of action in this situation, the Court will assume, without deciding, for the sake of this motion that the APA confers a cause of action for the claims that Plaintiff brings.

## IV.   CONCLUSION

For the reasons stated above, the Court will GRANT Defendant's Motion for

Summary Judgment (ECF No. 18) and DENY Plaintiff's Motion for Summary Judgment

(ECF No. 23).  Judgment will be entered in favor of Defendant.

A separate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and forward a copy

to Plaintiff at his address of record.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Date:  September 13, 2022